FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDEE R., | NO: 1:18-CV-3095-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 19 and 24. This matter was submitted for consideration without oral

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

argument. The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Michael Howard. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 19, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 24.

## JURISDICTION

Plaintiff Lindee R.[2] protectively filed for disability insurance benefits on June 17, 2014. Tr. 229-37. Plaintiff alleged an onset date of June 1, 2014. *See* Tr. 231. Benefits were denied initially, Tr. 165-71, and upon reconsideration, Tr. 174-80. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on November 1, 2016. Tr. 81-115. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 16-40, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g).

/ / /

/ / /

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 31 years old at the time of the hearing. Tr. 90. She completed 12th grade and was in special education classes. Tr. 90-91, 94. Plaintiff lived with her autistic daughter, but testified that her mother helped every day with taking care of her daughter and grocery shopping. Tr. 97, 101. Plaintiff has work history as a cashier. Tr. 91, 109. Plaintiff testified that if she were to work an eight-hour day, she would be able to be on her feet for one hour and need to sit for three hours. Tr. 100.

Plaintiff was born prematurely, had open heart surgery when she was a baby, and had surgery to shorten her ulna bone in high school. Tr. 95. She had carpal tunnel surgery in 2014, and testified that she still experiences pain and swelling in her hands. Tr. 96-97. Plaintiff reported that she is in pain 90 percent of the day, and spends three hours a day laying down due to pain in her feet, back, groin, and hips. Tr. 98. She gets migraines three or four times a month, and her hands cramp and become painful. Tr. 99-101.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

/ / /

/ / /

# FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2014, through her date last insured of December 31, 2014. Tr. 22. At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease, lupus, osteoarthritis, asthma/chronic obstructive

pulmonary disease, and obesity.  Tr. 22.  At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 25.  The ALJ then found that, through the date last insured, Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a).  The claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently.  She can sit for six hours in an eight-hour workday and stand and/or walk for two hours in an eight-hour workday with normal rest breaks.  She can occasionally climb ramps and stairs, balance, stoop, bend, squat, kneel, and crouch.  The claimant can never crawl or climb ladders, ropes, and scaffolds.  She cannot be exposed to dust, gases, and other pulmonary irritants.  The claimant cannot be exposed to hazards in the workplace such as heights and moving machinery.

Tr. 27.

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.  Tr. 33.  At step five, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including: callout operator and addressor.  Tr. 33-34.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 1, 2014, the alleged onset date, through December 31, 2014, the date last insured.  Tr. 34.

/ / /

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. ECF No. 19. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly considered the lay witness evidence; and

4. Whether the ALJ erred at step five.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 28.

### 1. Lack of Objective Medical Evidence

First, the ALJ noted "the objective medical record as a whole does not support the alleged severity of [Plaintiff's] workplace limitations prior to the date last insured. The objective physical examinations, imaging, testing, and history of medical treatment also are not consistent with [Plaintiff's] subjective complaints."

Tr. 28. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling limitations, including unremarkable imaging of Plaintiff's lumbar spine; unremarkable pulmonary function testing; and "objective physical examinations of [Plaintiff] reveal[ing] primarily subjective complaints of weakness with only minimal objective physical findings." Tr. 28 (citing Tr. 343-44, 448, 651-53, 767, 782, 819-22, 877-78, 887, 892); *see Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). In addition, the ALJ relied on a September 2014 examination of Plaintiff, notably conducted "three months after the June 2014 alleged onset date and three months prior to the December 31, 2014 date last insured," finding that Plaintiff had cervical spine tenderness with range of motion in flexion, extension, side bending, and rotation; complete range of motion in shoulders and knees; minimal synovitis in her hands and wrists; ability to clasp objects and completely close her hands; full range

of motion in feet and ankles; and normal x-rays of Plaintiff's right foot. Tr. 23-24, 413, 447-48.

Plaintiff argues that "the ALJ improperly found [Plaintiff's] testimony was not wholly supported by the objective evidence." ECF No. 19 at 18. However, the Court's review of the ALJ's decision indicates that Plaintiff's treatment records during the relevant adjudicatory period were considered in their entirety, including largely normal MRI and x-rays of Plaintiff's lumbar spine in 2016, reported tenderness with palpation, minimal range of motion limitations, positive Tinel's testing, swelling in her foot, reported wheezing, and mouth sores. Tr. 23-32.

Based on the foregoing, and regardless of evidence that could be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with objective medical evidence during the relevant adjudicatory period. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *See Burch*, 400 F.3d at 679. The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

### 2. *Daily Activities*

Second, the ALJ found Plaintiff's "activities of daily living do not support the subjective complaints by [Plaintiff]." Tr. 28. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also Orn*

*v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ cited Plaintiff's report that she performed all her own personal care, although it "took longer than it used to"; made her own meals and performed household chores, with "occasional" help from family; paid bills, counted change and handled a checkbook; and attended her daughter's school functions and doctor appointments. Tr. 28, 60-63, 272-75. Moreover, Plaintiff took care of her young autistic daughter, including getting her daughter dressed, bathed, and fed. Tr. 28. 272.

Plaintiff generally argues her functioning "has been minimal" and cites her self-report that she "was receiving help from her family to care for her daughter and cat, to do chores and meal prep, transportation, shopping, and so forth." ECF No. 19 at 26 (citing Tr. 272-80). However, the ALJ acknowledges that Plaintiff receives some help from family in her daily activities. Tr. 28. Moreover, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's documented daily activities, including living alone while caring for her autistic child, was inconsistent with her allegations of

incacitating limitations. Tr. 28; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Work History

Finally, the ALJ found that Plaintiff had an "intermittent work history, even prior to the date last insured." Tr. 32. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas*, 278 F.3d at 959; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929; SSR 96–7. Here, the ALJ specifically noted that "[l]ong before she began experiencing the symptoms of lupus, she was not engaged in the workforce on more than an intermittent or part time basis. Even about 2003, about the time she would have reached adulthood, she did not enter the workforce or earn an income close to [substantial gainful activity]." Tr. 32-33, 245.

Plaintiff argues that the ALJ failed to consider "barriers [Plaintiff] faced to employment," including her prior testimony that she underwent two surgeries on her arm in 2003, had a car accident, had medical complications related to a pregnancy, and was a seasonal worker. ECF No. 19 at 20 (citing Tr. 47-52, 68-69, 95).

However, regardless of evidence that might be considered more favorable to Plaintiff, including explanations for her limited work history, it was reasonable for the ALJ to consider Plaintiff's poor work history over the eleven-year period prior to her alleged onset date, "as [he] weigh[ed] the reasons for [Plaintiff's] current absence from the workforce." Tr. 33; *See Burch*, 400 F.3d at 679. Moreover, even assuming the ALJ erred in this reasoning, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005).

Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate

reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at

830-31). "However, the ALJ need not accept the opinion of any physician,

including a treating physician, if that opinion is brief, conclusory and inadequately

supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219,

1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or

psychologist is given more weight than that of an "other source." *See* SSR 06-03p

(Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

"Other sources" include nurse practitioners, physician assistants, therapists, teachers,

social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d),

416.913(d).[3] The ALJ need only provide "germane reasons" for disregarding an

"other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to

_____

[3] As noted by Plaintiff, for "cases filed on or after March 27, 2017, SSA

regulations now recognize the training of ARNPs [] as 'acceptable medical

sources'." ECF No. 19 at 7 (citing 20 C.F.R. §§ 404.1502(7), 404.1527(f)).

However, this case was filed before March 27, 2017, thus, the Court applies the

law in effect as of the filing date.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

"consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of treating physician, Michael Coan, D.O.; treating physician John Addison, M.D.; and treating nurse practitioners Lumor Chet, ARNP and Shereen Stocker, ARNP. ECF No. 19 at 8-18.

### 1. Michael Coan, D.O.

First, the ALJ considered Dr. Coan's opinions from the relevant adjudicatory period between Plaintiff's alleged onset date of June 1, 2014, and her date last insured of December 31, 2014. Tr. 29-30. In September 2014, Dr. Coan wrote a letter noting that Plaintiff has "positive ANA" and "[in] general the activity of her disease is associated with a higher incidence of morbidity and mortality and [he] would not expect her to be able to perform at the capacity of her peers of the same sex and age." Tr. 423. In October 2014, Dr. Coan generally opined that Plaintiff was limited in her ability to do "any activity involving joint load and repeating motion," gripping, standing, and "physically demanding" activities. Tr. 431. And in November 2014, Dr. Coan wrote a letter opining that Plaintiff "will not be able to function in a work environment highly in the near future," and "she should not be expected to be successful at meaningful employ[ment]." Tr. 441.

In addition, the ALJ considered Dr. Coan's May 2015 and August 2016 opinions, both assessed after Plaintiff's date last insured. Tr. 30-31. In May 2015,

Dr. Coan opined that it was more probable than not that Plaintiff would miss work due to medical impairments, and again noted that she "should not be expected to compete with her peers of same sex and age." Tr. 640. In a separate opinion, also in May 2015, Dr. Coan opined that Plaintiff was limited in her ability to lift heavy objects, stand or sit for long periods, bend over, reach above, concentrate for extended periods of time, and make repetitive motions. Tr. 750. He further noted that Plaintiff was "not likely able to tolerate [more than] 21-30 hours a week but not measured so unknown." Tr. 750. In April 2016, Dr. Coan again opined that Plaintiff would likely miss work due to medical impairments, and work on a regular and continuous basis would cause Plaintiff's condition to deteriorate. Tr. 781.

The ALJ collectively gave only "some weight to the opinions of Dr. Coan, as he is [Plaintiff's] treating provider," for several reasons.[4] Tr. 30. First, the ALJ

---

[4] The ALJ additionally noted that "several of" Dr. Coan's opinions, specifically his opinions from May 2015 and August 2016, were "offered long after the date last insured" of December 2014. Tr. 30. Plaintiff correctly notes that medical evaluations made after a claimant's insured status expired are still relevant to pre-expiration conditions. ECF No. 19 at 12 (citing *Lester*, 81 F.3d at 832). However, even assuming, *arguendo*, that the ALJ erred in mentioning that these opinions were offered after the date last insured, any error is harmless because, as discussed

noted that Dr. Coan's opinions "are often vague statements of an impairment or invade the province." Tr. 30. As an initial matter, a statement from a medical provider that Plaintiff is "unable to work" is not considered to be a medical opinion; rather, it is an administrative finding that would be dispositive of a case, and is therefore an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) and (3); SSR 96-5p, *available at* 1996 WL 374183 at *2 (July 2, 1996) ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Thus, it was reasonable for the ALJ to note that "the determination of disability is an issue reserved for the Commissioner. To the extent Dr. [C]oan's opinions suggest that [Plaintiff] is disabled, [the ALJ] cannot give it any weight." Tr. 31.

Second, the ALJ found that Dr. Coan's opinions were "largely vague expressions of impairment" and did not "provide[] an assessment of [Plaintiff's] residual functional capacity that could be weighed against objective findings or medical records." Tr. 30, 423, 431-32, 441, 639-40, 750-53, 780-81. Similarly, Dr. Coan repeatedly "indicated the [Plaintiff] needed to undergo a functional capacity assessment before he could opine as to what she was able to do in her home and specifically perform in the workplace." Tr. 30, 423, 432, 750. Plaintiff contends

herein, the ALJ offered additional reasons, supported by substantial evidence, for rejecting Dr. Coan's opinions. *See Carmickle*, 533 F.3d at 1162-63.

that Dr. Coan's assessment that Plaintiff was limited in her ability to grip and stand, and was likely to miss work every month, "speaks to significant limitations that would preclude work activity." ECF No. 19 at 9, 12.

However, it is well-settled in the Ninth Circuit that where a physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); *see also Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."). Thus, it was reasonable for the ALJ to rely on Dr. Coan's failure to assess specific functional limitations, and his own consistent reference to the need for further functional testing, as a reason to discount his opinions. The only finding by Dr. Coan that arguably rises to the level of a "specific functional limitation" is his May 2015 note that Plaintiff was "not likely" to tolerate more than 21-30 hours of work per week; however, Plaintiff acknowledges that Dr. Coan further opined that Plaintiff's ability to work "had not been measured, so [sic] unknown." ECF No. 19 at 11 (citing Tr. 750). Moreover, Plaintiff fails to identify any specific limitations assessed by Dr. Coan that were not properly accounted for in the assessed RFC. *See Molina*, 674 F.3d at 1111 (an error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination"). For all of these reasons, it was reasonable

for the ALJ to grant only some weight to Dr. Coan's opinions because they failed to assign specific functional limitations.

Third, the ALJ found Dr. Coan's opinions "are often inconsistent with the objective medical record as a whole." Tr. 30. An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In support of this finding, the ALJ relied on "the objective physical examinations and imaging of [Plaintiff] that demonstrated she was not as limited as he opined," including: no wheezes or rhonchi, unremarkable joints, no rash or lesions, no edema, normal pulmonary testing, normal back x-rays, mild lumbar spine MRI results, full range of motion, normal gait, and negative MRI of lower extremity. Tr. 30 (citing Tr. 343-44, 448, 651-53, 767, 782, 821, 877-78, 887, 892). The ALJ additionally relied on "a physical examination of [Plaintiff] conducted in September of 2014, only a few months prior to the date last insured, which found the presence of newly-diagnosed lupus but relatively little functional impairment." Tr. 30; *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes).

Plaintiff argues the September 2014 examination cited by the ALJ also included findings of a RAPID3 score of 25.7; minimal sclerodactyly; reported tenderness in cervical spine with range of motion; reported tenderness on palpation of lumbar spine; minimal synovitis in hands and wrist; references to a history of

abnormal pulmonary testing; and Dr. Coan's assessment that Plaintiff's disease pattern was "severe" and her condition had "deteriorated." ECF No. 19 at 13 (citing Tr. 447-48, 451). However, regardless of evidence that might be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the objective examinations and imaging of Plaintiff were inconsistent with the limitations opined by Dr. Coan. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

As a final matter, in June 2017, several months after the ALJ decision was issued in March 2017, Dr. Coan again opined that Plaintiff had physical conditions that would likely cause her pain, she had to lie down during the day for an "unknown" period of time, it was "unknown if she could tolerate work," it was probable Plaintiff would miss an "unknown" number of days per month due to medical impairments, and her prognosis was "guarded at this time stable." Tr. 9-10. The Appeals Council acknowledged the receipt of this evidence but found it "does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." Tr. 1-2. In a footnote of her opening brief, Plaintiff generally noted that the Appeals Council "shall consider new evidence if it relates to the period on or before the date of the ALJ's decision." ECF No. 19 at 5 (citing 20 C.F.R. § 404.970(b) (2017)); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). However, the Appeals Council is only required to consider new evidence if it "relates to the period on or

before the date of the [ALJ's] hearing decision" and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b).

Here, the Court may decline to address whether the Appeals Council erroneously considered Dr. Coan's 2017 opinion, because Plaintiff fails to specifically challenge the Appeals Council's finding that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. *Carmickle*, 533 F.3d at 1161 n.2. Moreover, similar to Dr. Coan's previous opinions discussed extensively above, the 2017 opinion was vague and failed to assess specific functional limitations. Tr. 9-10. Thus, this new evidence poses no reasonable probability of changing the outcome of the ALJ's decision. The Court declines to remand on the basis of Dr. Coan's 2017 opinion.

For all of these reasons, the Court finds the ALJ did not err in considering Dr. Coan's opinions.

### 2. *John Adkison, M.D.*

In May 2015, Dr. John Adkison opined that Plaintiff was "severely limited," which was defined as unable to lift at least 2 pounds or unable to stand or walk, due to ulnar abutment syndrome in her left wrist, with carpal tunnel syndrome. Tr. 754. However, as noted by the ALJ, Dr. Adkison further opined that this condition was not likely to limit her ability to work after the scheduled surgical repair of her left wrist. Tr. 755. The ALJ gave little weight to the opinions of Dr. Adkison, because

"they are inconsistent with the objective medical record as a whole, and the stated reason for the limitations (surgery pending) are inconsistent with a finding that she cannot work any hours or that she can lift only two pounds." [5] Tr. 31. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

In support of this finding, the ALJ cited objective examinations and imaging, including the September 2014 physical exam discussed extensively above, that "found very few and minor symptoms and limitations." Tr. 31, 447-48, 451. The ALJ additionally noted that records prior to Dr. Adkison's 2014 opinion are sparse

---

[5] The ALJ also gave "little weight to [Dr. Adkison's] opinions to the extent he opines [Plaintiff] is unable to work, as [the] determination of disability is an issue reserved for the Commissioner." Tr. 31. As noted above, a statement from a medical provider that Plaintiff is "unable to work" is not considered to be a medical opinion; rather, it is an administrative finding that would be dispositive of a case, and is therefore an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) and (3). Thus, it was reasonable for the ALJ to note that "to the extent" Dr. Adkison opined as to the ultimate determination of disability, his opinion was given little weight. Tr. 31.

and "simply not consistent" with the severity of Dr. Adkison's assessment that Plaintiff was unable to lift at least 2 pounds or unable to stand or walk. Tr. 31, 755. For instance, imaging was essentially unremarkable in August and September 2014, respectively, for the left knee and right foot; January 2014 examination notes showed "possible lupus," with mouth sores, hand symptomatic, and "other joints doing fairly well"; and a January 2014 physical examination that found Plaintiff in no acute distress, no rashes or skin issues, mucus membranes intact, normal respiration, soft abdomen, and unremarkable joints. Tr. 31 (citing Tr. 343-44, 413, 417).

Plaintiff argues that the ALJ improperly found Dr. Adkison's opinion inconsistent with the medical record, because (1) the September 2014 treatment visit "was for Plaintiff's rheumatological disorder, and not her left arm impairment"; (2) treatment records in April 2014 showed moderate left median nerve compromise, and right side nerve conduction slowing; and (3) after surgery, Plaintiff's fracture line was present in treatment notes from August 2014 through November 2014. ECF No. 19 at 15 (citing Tr. 366, 434-35, 438-39). Plaintiff additionally contends that the ALJ improperly failed to consider records taken after Dr. Adkison's opinion was rendered, as opposed to relying only on records dated before his opinion. ECF No. 19 at 15-16. However, the ALJ did consider Plaintiff's reports to Dr. Adkison in August 2014 that her pain was improving after carpal tunnel surgery and that she was not using an assistive device, and objective findings that her motor and sensory

exams were grossly intact without deficit; and treatment notes in October 2014 indicating that Plaintiff had essentially normal range of motion in her wrist with no atrophy. ECF No. 24 at 12 (citing Tr. 24, 434, 437). Moreover, as noted by Defendant, "the ALJ specifically and comprehensively cited numerous physical exams performed by longitudinal treating physician Dr. Coan as well as various treating foot and ankle specialists, with supporting imaging and laboratory studies. ECF No. 24 at 13.

As a final matter, despite Plaintiff's argument to the contrary, the Court finds it was reasonable for the ALJ to infer that Dr. Adkison's opinion was arguably "based on pending surgery" because he specifically opined that (1) Plaintiff's condition was not permanent; (2) Plaintiff's condition would not impact her ability to access services; and (3) there were not specific issues that needed further evaluation aside from the scheduled surgery. *See* ECF No. 19 at 16; Tr. 755-56; *Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *see also* 42 U.S.C. § 423(d)(1)(A) (To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

For all of these reasons, it was reasonable for the ALJ to find that the objective examinations and imaging in the record as a whole were inconsistent with

the severe limitations assessed by Dr. Adkison for an undisclosed period of time.

The ALJ did not err in considering Dr. Adkison's opinion.

### 3. *Lumor Chet, ARNP and Shereen Stocker, ARNP*

In August 2011, Lumor Chet, ARNP, opined that for a period of 12 months, Plaintiff was limited to sedentary work; was limited in her ability to lift heavy objects, stand for long periods of time, and bend over; and was unable to work, or participate in activities related to preparing for and looking for work. Tr. 643-44. In July 2012, Shereen Stocker, ARNP, did not assess specific functional limitations, but opined that Plaintiff's condition would limit her ability to work for a period of 12 months. Tr. 647. Ms. Stocker also opined that she was "unsure at this time," but "most likely" Plaintiff's condition is permanent. Tr. 647. The ALJ gave these opinions "some weight" to the extent they are consistent with the RFC. Tr. 31. "In other words, it appears to be their conclusion that [Plaintiff] would be able to perform sedentary work, as [the ALJ] found [in his decision]. . . . However, [the ALJ gave] little weight to the remainder of their opinions, as they are inconsistent with the objective medical record as a whole." Tr. 31-32.

As an initial matter, Plaintiff correctly notes that the ALJ (1) improperly attributed all of the opined limitations to Ms. Stocker, "when the August 2011 opinion was written by Ms. Chet"; and (2) improperly noted that the opinions were not from a treating source, despite both Ms. Stocker and Ms. Chet being identified as treating providers in the record. ECF No. 19 at 16-17 (citing Tr. 125, 351, 643-44,

647). However, even assuming the ALJ erred in these statements, the ALJ offered additional reasons, supported by substantial evidence, for granting portions of these opinions little weight. *See Carmickle*, 533 F.3d at 1162-63; *see also Molina*, 674 F.3d at 1115 (error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination").

First, the ALJ found these opinions include "very little analysis or basis for the opinion, and [are] at odds with her essentially normal physical examination two years later in the Fall of 2014." Tr. 31. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228; *see also Orn*, 495 F.3d at 631 (consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion). Plaintiff generally argues the ALJ's reliance on the September 2014 exam "is both conclusory and contradicted by the very provider who performed the exam." ECF No.19 at 17. However, despite findings in the September 2014 report that could be considered more favorable toward Plaintiff, it was reasonable for the ALJ to give only some weight to these ARNP opinions because they did not contain sufficient explanation and were inconsistent with the overall record.

Second, the ALJ found "the objective physical examinations and imaging of [Plaintiff] demonstrated she was limited to a reduced range of sedentary work." Tr. 31-32. The Court may decline to address this issue as it was not identified or

challenged by Plaintiff in her opening brief. *Carmickle*, 533 F.3d at 1161 n.2.

Moreover, the ALJ properly discredited the ARNP opinions because they were

unsupported by objective medical findings. *See Batson*, 359 F.3d at 1195. For all of

these reasons, the ALJ properly considered the opinions of Ms. Chet and Ms.

Stocker, and gave germane reasons for giving their opinions some weight to the

extent they are consistent with the assessed RFC.

**C. Lay Witness**

"In determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc.*

*Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12

F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to

observe a claimant's symptoms and daily activities are competent to testify as to

[his] condition."). To discount evidence from lay witnesses, an ALJ must give

reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919.

At the hearing in November 2016, Plaintiff's mother, Cheryl Ramsey, testified

that she helps her daughter every day with taking care of her granddaughter, fixing

dinner, and grocery shopping; that pain in Plaintiff's feet and back cause her to be

unable to walk or sleep; and that Plaintiff's symptoms started before September

2014 and have worsened over time. Tr. 103-08. The ALJ gave some weight to her

opinion as of the date of the hearing. Tr. 32. However, the ALJ discounted her

testimony because it "was at odds with the medical records created" during the

relevant adjudicatory period, including the September 2014 physical examination which was also attended by Ms. Ramsey; and Ms. Ramsey's "statements do not outweigh the accumulated medical evidence regarding the extent to which [Plaintiff's] impairments limit her functional abilities." Tr. 32.

Plaintiff argues the ALJ's finding is unsupported because the September 2014 examination "contained positive objective findings consistent with [Plaintiff's] significant lupus-related impairments." ECF No. 19 at 18. However, an ALJ may discount lay testimony if it conflicts with the medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). As noted by the ALJ, at the September 2014 examination, Plaintiff "displayed little or no difficulty and had few symptoms," including: cervical spine tenderness with range of motion in flexion, extension, side bending, and rotation; complete range of motion in shoulders and knees; minimal synovitis in her hands and wrists; ability to clasp objects and completely close her hands; and full range of motion in feet and ankles. Tr. 32, 413, 447-48. Thus, this was a germane reason for the ALJ to give Ms. Ramsey's testimony only some weight. Moreover, even assuming, *arguendo*, that the ALJ failed to properly weigh this lay witness testimony, any error is harmless because the witness' testimony was substantially the same as the Plaintiff's, and as discussed above, the ALJ provided legally sufficient reasons for finding the claimant less than fully credible. *See Molina*, 674 F.3d at 1121-22. For all of these reasons, the ALJ did not err in considering Ms. Ramsey's lay witness testimony.

**D. Step Five**

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012). It has, however, found "a comparison to other cases . . . instructive." *Id.* The Ninth Circuit has further made clear that "[t]he statute in question indicates that the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)." *Id.* (emphasis in original) (citing 42 U.S.C. §§ 423(d)(2)(A)). As such, upon finding "*either* of the two numbers 'significant,'" the Court "must uphold the ALJ's decision." *Id.*

Here, at step five, the ALJ found Plaintiff could perform the jobs of callout operator (DOT 237.367-014), for which the vocational expert ("VE") testified there are approximately 7,414 jobs in the national economy; and addressor (DOT 209.587-010), for which the VE testified there are 8,628 such jobs in the national economy. Tr. 34. Plaintiff argues the combined total of 16,042 jobs in the national economy is not a significant number pursuant to Ninth Circuit precedent. ECF No. 19 at 6 (citing *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014)) (finding that 25,000 jobs is a significant number of national jobs, but it is a "close call."). Defendant argues that a comparison of findings in the Ninth Circuit

compels the court to conclude that 16,042 national jobs is a significant number. ECF No. 24 at 19-20.

As an initial matter, Defendant cites Ninth Circuit cases as to what constitutes a "significant" number when considering national jobs. *See Heather C-S v. Berryhill*, 2018 WL 3603093, at *6 (E.D. Wash. June 27, 2018) (22,000 national jobs and 550 regional jobs was significant); *Montalbo v. Colvin*, 231 F.Supp.3d 846, 863 (D. Haw. 2017) (deferring to ALJ finding that 12,300 national jobs was significant standing on its own but noting that the ALJ also considered regional numbers). However, the Court's review of this issue indicates that district courts consistently diverge on this issue, often finding that national jobs totaling less than the 25,000 characterized by the Ninth Circuit as a "close call," is not a significant number. *See Baker v. Comm'r of Soc. Sec.*, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (14,500 insignificant); *Valencia v. Astrue*, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (14,082 insignificant); *Sellimovic v. Colvin*, 2014 WL 4662251, at *10 (D. Ariz. Sept. 18, 2014) (13,110 positions insignificant); *Lisa L. v. Comm'r of Social Sec.*, 2018 WL 6334996, at *4-5 (D. Or. Dec. 5, 2018) (holding that 11,084 national jobs is not significant).

Moreover, while the decisions cited by Defendant found lower national jobs than those in this case to be significant, those courts' conclusions rested on a consideration of both national and regional job numbers. *See, e.g., Aguilar v. Colvin*, No. 5:15-cv-02081-GJS, 2016 WL 3660296, at *3 (C.D. Cal. July 8, 2016)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 32

(11,850 national jobs and 1,080 regional jobs significant; observing trend in the Central District of California to find job numbers over 10,000 nationally and 1,000 locally to be sufficient); *Evans v. Colvin*, No. ED CV 13-01500 RZ, 2014 WL 3845046, at *1-*3 (C.D. Cal. Aug. 4, 2014) (6,200 national jobs and 600 regional jobs significant, conclusion based on regional jobs numbers).  In this case, the vocational expert did not testify to regional job numbers, and the ALJ made no findings regarding regional job numbers. Tr. 34, 109.  Therefore, the cases identified *supra* that affirmed an ALJ's finding of significant jobs numbers based in partial reliance on regional jobs numbers do not compel this court to affirm the ALJ's findings here.

Finally, although the Ninth Circuit has declined to adopt a "bright line" rule about the sufficiency of jobs numbers, recent decisions have questioned the sufficiency of numbers that are similar to, and less than, those found in this case. *See, e.g.*, *De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018) (questioning sufficiency of 5,000 national and 500 regional jobs); *Lemauga v. Berryhill*, 686 F. App'x 420, 422 (9th Cir. 2017) (questioning sufficiency of 12,600 national jobs and 1,530 regional jobs); *Randazzo v. Berryhill*, 725 F. App'x 445, 448 (9th Cir. 2017) (questioning sufficiency of 10,000 national jobs and 550 regional jobs).  The undersigned recognizes these unpublished cases are not binding authority but finds the discussion persuasive and relevant for the court's consideration in evaluating what constitutes significant numbers in the national economy.  Here, the number at

issue (16,042 jobs) is almost 10,000 below the 25,000 jobs that the Ninth Circuit previously found to be a close call. *Gutierrez*, 740 F.3d at 529.

Based on the foregoing, the Court concludes that the reasonable interpretation of the relevant authority is that 16,042 national jobs, with no consideration of regional jobs, does not constitute significant numbers under the statute. Thus, the ALJ's reliance on 7,414 callout operator jobs in the national economy, and 8,628 addressor jobs in the national economy, is insufficient to carry the ALJ's burden at step five. This case must be remanded for the limited purpose of re-evaluating step five. On remand, the ALJ should be directed to take testimony from a vocational expert to determine whether there are other jobs available in significant numbers in the national and/or regional economy that Plaintiff is capable of performing.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This

policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Although Plaintiff requests a remand with a direction to award benefits, ECF No. 19 at 6, the Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). It is not clear, based upon the VE's testimony and the ALJ's decision, whether there are other jobs in the local and national economy that plaintiff could perform with the RFC assessed by the ALJ in this case. Of particular note in this case, the VE testified that Plaintiff could perform the job of toy stuffer (DOT 731.687-182), for which there are 4,210 jobs in the national economy; however, this job was not identified or considered by the ALJ at step five. *See* Tr. 109. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Thus, the Court remands this case for the limited purpose of re-evaluating step five. On remand, the ALJ shall solicit the

testimony of a VE to determine the type of work, if any, that plaintiff is capable of performing at step five.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 24**, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgement shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** November 12, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge